**UNITED STATES of America,
Appellee,**

v.

**James R. HOFFA, Benjamin Dranow, Zachary A. Strate, Jr., S. George Burris, Abe I. Weinblatt and Calvin Kovens, Appellants.**

**No. 18006.**

United States Court of Appeals,
Seventh Circuit.

Aug. 5, 1970.

Certiorari Denied Jan. 11, 1971.

See 91 S.Ct. 455, 457.

See also 6 Cir., 437 F.2d 11.

**1244**

Frank Ragano, Tampa, Fla., Maurice J. Walsh, Harvey M. Silets, Chicago, Ill., Morris A. Shenker, St. Louis, Mo., Louis G. Shushan, New Orleans, La., Jacques M. Schiffer, Rockville Centre, N. Y., for appellants.

Marshall Tamor Golding, Criminal Division, Department of Justice, Washington, D. C., William J. Bauer, U. S. Atty., Chicago, Ill., Will Wilson, Asst. Atty. Gen., Jerome M. Feit, U. S. Dept. of Justice, Washington, D. C., for appellee; D. Arthur Connelly, Asst. U. S. Atty., of counsel.

Before SWYGERT, Chief Judge, and DUFFY and CASTLE, Senior Circuit Judges.

DUFFY, Senior Circuit Judge.

This is the third time that an appeal in the case at bar has been before this Court. Our previous decisions in this case are reported at 367 F.2d 698 (October 4, 1966) and 402 F.2d 380 (August 15, 1968).

The indictment herein contained twenty-eight counts. The first twenty-seven counts charged substantive violations of the mail and wire fraud statutes (18 U. S.C. §§ 1341, 1343). The twenty-eighth count charged a conspiracy to commit the substantive counts.

After a jury trial, all appellants were convicted on the conspiracy count and each appellant was convicted on certain of the substantive counts.

The Court directed a judgment of acquittal of all defendants on counts 2, 5, 11, 26 and 27. The Court granted the motion of the Government to dismiss counts 10 and 18.

Upon appeal (first appeal) the judgments of convictions were affirmed by this Court with one judge dissenting. On that appeal a petition to this Court for a rehearing en banc was denied, with two judges of the entire Court dissenting.

In response to a petition for a Writ of Certiorari (No. 1003, O.T.1966), the Government disclosed that on December 2, 1963, it had overheard a conversation between defendant Burris and one Benjamin Sigelbaum at the latter's office in Miami, Florida, in which Burris discussed certain matters at most peripherally relevant to this case and which were neither introduced in evidence nor used as a basis for any investigative leads.[1]

---

1. At the time of the disclosure to the Supreme Court of the Burris-Sigelbaum overhearing, the Government was proceeding under a policy of reviewing whether there had been prior instances in which an unlawful electronic surveillance had affected a case which had been brought to trial and of notifying the appropriate court whenever it discovered monitoring information which was arguably relevant to the litigation before that Court.

The Supreme Court remanded the case to the District Court for a hearing to determine whether that or any other electronically overheard conversations had tainted any of the convictions. Hoffa et al. v. United States, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1966).

The District Court was instructed by the Supreme Court that if it found taint from any such intercepted conversations, it was to direct a new trial as to the particular defendant whose conviction was thus found to be infected. If the District Court found no taint, it was instructed to enter final judgments of convictions. 387 U.S. at page 234, 87 S.Ct. 1583.

The Supreme Court expressly limited the issue to be presented when it stated: "In such proceedings, the District Court will confine the evidence presented by both sides to that which is material to questions of the content of this and any other electronically eavesdropped conversations, and of the relevance of any such conversations to petitioners' subsequent convictions." 387 U.S. at pages 233–234, 87 S.Ct. at page 1584.

An evidentiary hearing was held before the District Court. That Court found that the Government had prior knowledge of all the information revealed by the Burris-Sigelbaum conversation. United States v. Hoffa, 273 F. Supp. 141, 143–144 (N.D.Ill., 1967). The Court also found that none of the convictions of any of the other defendants was tainted.

At the hearing before the District Court, the Government also tendered to the Court for an *in camera* inspection, the records of nine additional overhearings of conversations in which various of the defendants were possible participants. After inspection, the District Court found the tendered records consisted of "* * * extremely brief overhearings that contain no information either remotely or peripherally relevant to the transactions and evidence on which these defendants were indicted and convicted." (273 F.Supp. at page 143).

There was an additional finding by the District Court that defendants had failed to establish that the Government possessed any additional and unproduced records of electronically overheard conversations which involved any of the defendants. (273 F.Supp. at page 147).

On the appeal to this Court (second appeal), we affirmed the District Court with one judge dissenting. Our majority opinion sustained the finding of the District Court that the Burris-Sigelbaum conversation which occurred six months after the return of the indictment, was not used by the Government and that any possible relevant information in that conversation was known to the Government from wholly independent and lawful sources. We also held that after an examination of the record of the nine additional overhearings, the District Court was correct in finding that "* * * nothing contained therein is relevant to the issues in this case." (402 F.2d at page 383). We approved the conclusion of the District Court that none of the convictions was tainted by the use of improperly obtained evidence. (402 F.2d at page 384).

Again, a petition for a Writ of Certiorari was filed. Again, the Supreme Court remanded this case together with a considerable number of other somewhat similar cases, to the District Court "* * * for further proceedings in conformity with Alderman v. United States * * *." Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 1164, 22 L.Ed.2d 297 (1969).

In Alderman et al. v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968) the Supreme Court ruled that in order for a defendant to have an adequate opportunity to prove in the District Court that his conviction was tainted by electronic surveillance, there must be turned over to him without being screened *in camera* by the trial judge, all surveillance records as to which he has standing to object. However, the Supreme Court made clear that disclosure would be limited to such transcripts and that a defendant will not

"* * * have an unlimited license to rummage in the files of the Department of Justice." *Alderman, supra,* 394 U.S. at page 185, 89 S.Ct. at 973.

It was on the oral argument before this Court on the second appeal (402 F. 2d at pages 384–385) that a Government attorney handed to this Court a sealed folder containing F.B.I. logs of conversations of certain attorneys which had been overheard. At the suggestion of the Government attorney, we examined the logs and it was readily apparent that the conversations overheard had no reference whatsoever to the issues which were before our Court or had been before the District Court.

In the five overhearings of conversations which may have involved some of defendants' attorneys, one occurred two years after the conclusion of the trial. The first one was between Tony Accardo and several individuals one of whom was Richard Gorman who was trial attorney for defendant Burris. However, the conversation pertained entirely to the indictment of Accardo for income tax evasion and had nothing to do with any of the defendants in this case.

It seemed like a useless gesture which would cause further delay to send these logs back to the District Court. We also realized that being a part of the record on any appeal which might be taken from our decision, the Supreme Court could readily examine same and, in our view, would necessarily come to the same conclusion, to-wit: that the conversations of the attorneys had no connection whatsoever with the issues which were before us. The defendants certainly have no standing to require production of logs of overhearings of conversations between their attorneys and other clients concerning matters totally unrelated to this case.

In *Alderman,* the Court noted (394 U. S. at page 185, 89 S.Ct. at 973) that "Armed with the specified records of overheard conversations and with the right to cross-examine the appropriate officials in regard to the connection be-

tween those records and the case made against him, a defendant may need or be entitled to nothing else. Whether this is the case or not must be left to the informed discretion, good sense, and fairness of the trial judge."

We hold that in this respect the trial judge did exercise his informed discretion and good sense, and that there was no indication anywhere in the record as to any unfairness on his part.

In the instant case, the nine overhearings previously examined *in camera* were turned over to the defendants. The defendants were to use these logs in an attempt to demonstrate that their convictions had been tainted thereby. This was once again consistent with the Supreme Court's limitation of issues found in 387 U.S. at pages 233–234, 87 S.Ct. 1583, and pursuant to Alderman v. United States, *supra,* 394 U.S. at page 182, 89 S.Ct. 961.

The nine overhearings mentioned by the Government included four in Las Vegas, three in Detroit and two in Miami. Of the four in Las Vegas in which defendant Hoffa in some way participated, there was none in which his voice was heard.

As an illustration of the type of call involving Hoffa, a Major Riddle of the Dunes Hotel placed a call to Hoffa with reference to a four and a half million dollar loan that Riddle wished to obtain in order to buy an insurance company.

No investigation was made by the F. B.I. as a result of the calls described. As to those in Las Vegas, agents testified at the hearing that they were read and filed but that nothing was done because the information was considered to be of no value.

In the three overhearings in Detroit, Hoffa's voice was heard. These calls were placed from mobile telephone units located in automobiles owned by Teamster Local No. 299. They were monitored at the Detroit F.B.I. office by means of ordinary commercial type F.M. radio receivers.

Alderman v. United States, *supra*, 394 U.S. at page 179, 89 S.Ct. 961, N. 11, explains that the Fourth Amendment protects reasonable expectations of privacy. Surely, there was no expectation of privacy as to the Hoffa calls in Detroit which were exposed to everyone in that area who possessed a F.M. radio receiver or another automobile telephone tuned in to the same channel. See Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The remaining two overhearings in which Kovens apparently participated could have had nothing to do with the outcome of the trial. One was about two years after the return of the indictment and ten months after the trial; the other was one and a half years after the date of the indictment and about five months after the trial.

However, despite any feelings on our part as to the relevance of the nine overhearings, they were given, in full, to the defendants in the hearing in the instant case. This was in compliance with Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969). The District Court here found that the overhearings did not taint the convictions of the defendants. We agree!

Furthermore, we now reject the argument that because Kovens may have had permission to use the Sigelbaum office, and on one occasion was observed to have placed a telephone call from there when no one else was present, he had such standing as would entitle him to the production of all logs of overhearings from that office, or at least those in which a participant in the conversation overheard remains unidentified. Here, on the testimony credited by the trier of the facts, the possibility of Kovens having standing as to one or more of the unproduced overhearings from the Sigelbaum office is too remote and insubstantial. We perceive no basis for disturbing the trial court's conclusion in this respect.

Instead of arguing "taint" as was done on previous appeals, defendants now claim error by the District Court because of the denials by that court of defendants' request for the production of air tels.

It appears that air tels are brief summaries of the information contained in logs of recorded conversations. Air tels were sent to offices which did not have possession of the log itself. At the hearings before the District Court, defendants had full opportunity to examine the logs. We know of no good reason for demanding summaries of the logs when the complete logs had been turned over to the defendants.

The District Court, in its "informed discretion" (*Alderman, supra*, 394 U.S. at page 185, 89 S.Ct. 961) ruled that defendants neither needed nor were entitled to anything more than the specified conversations which were produced and were examined by the defendant.

We hold that this ruling did not constitute an abuse of the District Court's informed discretion, and that it was fair and made good sense.

This Court previously has held (402 F.2d at pages 383–384) that the District Court correctly found completeness at the first hearing on the basis of affidavits which were presented by the Government. At the second hearing, the District Court afforded the defendants the opportunity for cross examination of those who executed such affidavits. In the first hearing, such cross examination had been deliberately waived by the defendants.

Nothing was developed in the cross examination in the second hearing which, in any way, impaired the original finding of completeness by the District Court.

The defendants furnished a lengthy list of properties and premises in which they claimed a proprietary interest, but a careful search developed the fact that no electronic surveillance installation had been made at any of those locations.

On this appeal, the defendants seek to reargue a number of issues which were decided against them by this

**1248**

Court on the first and second appeals. We shall not again discuss our holdings in these respects. We reiterate our discussion of the "law of the case doctrine" found in 402 F.2d at page 387. If Certiorari should be granted from our decision herein, the Supreme Court will, undoubtedly, examine and decide those issues which that Court considers pertinent.

■ We hold that the last Supreme Court remand did not open to reconsideration the various contentions of the defendants in regard to the merits of their convictions.

We have examined the other contentions particularly regarding the Government's "burden of proof" and find them to be without merit.

The judgment of the District Court is affirmed.

SWYGERT, Chief Judge (concurring in part).

I agree that the issues raised in this appeal do not by themselves require a reversal. In other words, if these were the only issues on appeal, I would concur; however, I adhere to my dissents in the two earlier appeals and would reverse the convictions of the defendants for the reasons stated in those dissents.