Kathy Sue JOHNSON, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

BOARD OF EDUCATION OF the CITY OF CHICAGO, et al., Defendants-Appellees, Cross-Appellants.

Nos. 81–1965, 81–2001.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1981.

Decided Nov. 24, 1981.

Thomas H. Morsch, Sidley & Austin, Chicago, Ill., for Kathy Johnson.

Thomas F. Gardner, Kirkland & Ellis, Chicago, Ill., for Bd. of Ed. et al.

Before FAIRCHILD, Senior Circuit Judge, and CUDAHY and PELL, Circuit Judges.

PELL, Circuit Judge.

The present appeals arise from a determination by the district court that the controversy in these cases had not become moot by virtue of a consent decree between the United States Department of Justice and the Chicago Board of Education (the "Board") in other litigation.[1] These cases challenge the constitutionality of student assignment plans based on racial quotas which were originally adopted and implemented by the Board in 1976 for Gage Park and Morgan Park High Schools. The gravamen of the complaint is that the Board's voluntary racial quotas on enrollment have the discriminatory effect of requiring only black children to be transported from their neighborhood schools. Separate quotas for enrollment of blacks and whites were set as ceilings on the number of black children and the number of white children which could be admitted to these two schools. The purpose of these quotas, according to the Board, is to curb a trend of decreasing white enrollment and increasing black enrollment in these schools which might eventually result in two predominantly black, segregated schools.[2] Because the quotas for enrollment of blacks were set at a lower percentage level than that at which black students ordinarily would have applied and been admitted, the effect of the quotas was to exclude some blacks from admission to these schools. The quotas applicable to white students did not have this effect.

In response to the plaintiffs' motion for a permanent injunction against use of the quotas, the district court and this court on appeal upheld as constitutional the Board's use of the quotas. After the Supreme Court had granted certiorari, the Board and the Department of Justice in other litigation entered into a consent decree to develop a system-wide integration plan. At approximately the same time, the Board voluntarily discontinued use of the challenged quotas. The Supreme Court remanded, 449 U.S. 915, 101 S.Ct. 339, 66 L.Ed.2d 162 (1980), to this court, and, in turn, this court remanded, 645 F.2d 75 (7th Cir. 1981), to the district court for a determination as to whether the consent decree or any plan implementing the decree had mooted the controversy.

The district court determined that the case was not moot because the Board had readopted the racial quotas in question after remand by the Supreme Court. In keeping with its original judgment upholding the constitutionality of the quotas, the district court again denied plaintiffs' motion for a permanent injunction against use of the quotas. Accordingly, the issue now before this court is whether the consent decree or any implementation of the decree moots the plaintiffs' case despite continued use of the contested racial quotas by the Board. If the controversy is not deemed moot, an issue remains as to the proper course of action by this court in reviewing the district court's denial of the plaintiffs' motion for a permanent injunction against use of the quotas.

I.

The consent decree compels the Board to "develop and implement a system-wide plan

1. *United States v. Board of Education of the City of Chicago*, 88 F.R.D. 679 (N.D.Ill.1980).

2. For further elaboration on the factual background of this case, see this court's prior opinion in *Johnson v. Board of Education of the City of Chicago*, 604 F.2d 504 (7th Cir. 1979).

Although quotas were established for Hispanics as well, only the quotas for blacks were challenged by the plaintiffs in these cases. The plaintiffs are black children and their parents residing in the Gage Park and Morgan Park High Schools attendance areas.

to remedy the present effects of past segregation of Black and Hispanic students." Two of the "Basic Objectives" of the plan to be implemented by the Board are to "provide for the establishment of the greatest practicable number of stably desegregated schools" and to "ensure that the burdens of desegregation are not imposed arbitrarily on any racial or ethnic group." Nothing in the consent decree otherwise prohibits or mandates use of racial quotas for enrollment. After entering into the consent decree, the Board announced on October 1, 1980, that the challenged quota plan would be discontinued at the end of the 1980–81 school year. As previously noted, the sequel to this action was that the case was returned to the district court.

In April of 1981 the Board voted to reinstate the quota plans at Gage Park and Morgan Park High Schools for the 1981–82 school year. On April 29 the Board adopted a set of "Student Assignment Principles" for its integration plan pursuant to the consent decree. Under these principles, all integration efforts in the 1981–82 school year were to be voluntary, and mandatory busing of students would not be implemented until June of 1983 "to the extent that other techniques have been determined by the Board to be insufficient."

In the June 11, 1981 district court hearing on the plaintiffs' motion for a declaration of non-mootness and for entry of an injunction, the Board sought to introduce further evidence as to how the quotas were then being implemented at Morgan Park and Gage Park High Schools. The court denied the motion, reasoning that there was no need for the Board to introduce any evidence to the court in support of a position which the district court had upheld already in its prior opinion. The court heard no evidence on the current implementation of the plan beyond that already in the record. On appeal to this court, the Board stated in its brief that new feeder patterns and attendance areas adopted by the Board on August 10, 1981, were designed to remedy the prior exclusion of only black children from the two high schools. For the reasons stated herein, we need not address the issues of whether the Board's motion was properly denied or whether evidence of the Board's August 10 actions was properly part of the record on appeal before this court.

## II.

■ A case or controversy may become moot because there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). Both conditions must be satisfied before a case may be deemed moot. *Id.* In *Davis*, the Supreme Court concluded that the civil rights action before it was moot because the defendants had fully complied with the district court's remedial hiring order after discontinuing discriminatory tests, and there was no reasonable expectation that the defendants would ever again use the tests. The facts of the present case, however, differ sharply from those in *Davis* and fail to satisfy either condition for a determination of mootness.

■ The first condition for mootness under *Davis* is that there must not be any reasonable expectation that the alleged violation will recur. *County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). Even assuming that the newly adopted feeder patterns and attendance areas would and do eradicate the allegedly discriminatory effect of the quotas, as the Board contends, the controversy would not be moot if there is a reasonable expectation that the quotas may again be used to exclude only blacks. There is no question that racial quotas as such may be used by the Board despite the consent decree. As the Board concedes, it reinstituted the racial quotas shortly after entering into the consent decree and continues to use them. The only remaining determination as to the likelihood of recurrence of the challenged act is a determination of whether the consent decree precludes use of the quotas at Morgan Park and Gage Park

High Schools in such a way as to exclude only blacks from those schools.

The Board's only argument against the likelihood of recurrence of the alleged violation is that the Board must comply with the consent decree, and the decree requires that the burdens of integration "not be imposed arbitrarily on any racial or ethnic group." However, the alleged violation is not the arbitrary allocation of burdens in the system as a whole, but the arbitrary allocation of the burdens of integration as to Morgan Park and Gage Park High Schools specifically. The consent decree is not addressed to those schools alone but to the city system as a whole. It requires only that the Board develop a system-wide plan to make a fair allocation of the burdens of integration. We cannot conclude that a requirement that the burdens not be imposed "arbitrarily" on any racial group for the system as a whole by its terms precludes use of quotas at Morgan Park and Gage Park to exclude only blacks from those schools.

Significantly, the Board does not take the position that such use of the quotas would violate the consent decree or even that the consent decree may preclude such use of the quotas. To do so, the Board would be placed in the anomalous position of arguing that its present enrollment plan at Morgan Park and Gage Park violates the consent decree. As the statistics on "white flight" fluctuate, the Board may again, if it is not doing so now, resort to the quotas to exclude only blacks from these schools to preserve integration despite the consent decree. Mere voluntary cessation of the challenged act cannot moot a controversy. *United States v. W. T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Chicago and Northwestern Transportation Co. v. United Transportation Union*, 656 F.2d 274 (7th Cir. 1981); *Boyd v. Adams*, 513 F.2d 83 (7th Cir. 1975). Thus, there remains a reasonable likelihood that the quotas in question may again be used to exclude only blacks from Morgan Park and Gage Park High Schools despite the consent decree.

Our conclusion on the likelihood of recurrence of the challenged act pretermits the need for evaluating the district court's denial of the Board's motion to introduce further evidence on current implementation of the decree. On the record before us, however, we conclude that the present case is not moot as well under the second condition for mootness under *Davis*, the requirement that the interim relief or events must have irrevocably eradicated the effects of the alleged violation. Plaintiffs and other black students have been excluded, and continue to be excluded, from their neighborhood schools solely on the basis of their race pursuant to the challenged quotas.

The Board asserts that the controversy is moot because the Board has adopted new feeder patterns and attendance areas pursuant to the consent decree so that the quotas no longer have the discriminatory effect challenged by the plaintiffs. The plaintiffs, on the other hand, contend that the Board has reimplemented the quotas at the schools in exactly the same manner and with the same results as in 1976. They assert, and the district court agreed, that at present there is no city-wide plan in effect pursuant to the consent decree.

Although further elaboration in the district court as to current feeder patterns and attendance areas would have been useful on this point, we conclude that the plaintiffs and other black students continue to be excluded from their neighborhood schools solely on the basis of their race. The Board's adoption of allegedly non-discriminatory feeder patterns and attendance areas on August 10, 1981, cannot moot the controversy if they have not actually been implemented and do not irrevocably eradicate the effects of the alleged violation. Noticeably, the Board does not contend that the plaintiffs and other black students are not currently being excluded from their neighborhood schools solely on the basis of their race just as they were under the original 1976 plans. Instead, the Board states merely that black students excluded from Morgan Park and Gage Park High Schools now have a "viable opportunity to obtain an integrated education at a nearby

school...." Because the effects of the alleged violation continue despite the consent decree and any present implementation of the decree, the controversy cannot be deemed moot.

### III.

■ Having determined that the controversy is not moot, this court reinstates its prior judgment and opinion in *Johnson v. Board of Education of the City of Chicago*, 604 F.2d 504 (7th Cir. 1979), to uphold the district court's denial of an injunction against use of the quotas at Morgan Park and Gage Park High Schools. When a federal court of appeals has decided an issue in a case, the court's ruling establishes law which it itself should apply to the same issues in subsequent proceedings in that case absent "unusual and compelling circumstances." *United States v. Hoffa*, 436 F.2d 1243, 1248 (7th Cir. 1970), *cert. denied*, 400 U.S. 1000, 91 S.Ct. 455, 27 L.Ed.2d 451 (1971); *United States v. Hoffa*, 402 F.2d 380, 387 (7th Cir. 1968), *vacated and remanded on other grounds*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

■ The most significant Supreme Court opinion bearing on the issues decided by this court since our prior opinion in this case is *Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). In *Fullilove*, the Supreme Court upheld the use of explicit racial quotas setting aside 10% of all federal contracts for "minority business enterprises" in the Public Works Employment Act of 1977. Whatever view we might have of the merits of this controversy as a matter of first impression, we conclude that *Fullilove* does not so clearly conflict with the ruling by this court in its prior opinion as to constitute "unusual and compelling circumstances" warranting a departure from the law of the case. Specifically, the result in *Fullilove* does not conflict with this court's determination in *Johnson* that the use of racial quotas is constitutional in remedial programs designed to remedy the lingering effects of past discrimination.

To justify departure from our prior decision, the plaintiffs have submitted in their brief that recent statistics demonstrate that "white flight" continues to accelerate despite the quotas. Such statistics, however, are a two-edged sword. Statistics of increasing "white flight" also tend to confirm the original concerns upon which the Board's actions were predicated. The prior decision in *Johnson* affirmed in principle the legitimacy of taking "white flight" into account in a school board's voluntary implementation of desegregation efforts. Because statistics of increasing "white flight" cannot be said to invalidate this underpinning of the prior decision, we consider ourselves bound by the prior decision.

Our prior decision also continues to govern the issue of an award of attorney's fees in this case. *Johnson v. Board of Education of the City of Chicago*, 604 F.2d 504, 519 (7th Cir. 1979). As we said in *Johnson*, it was not an abuse of discretion for the district court to deny an award of attorney's fees to the plaintiffs under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and under the Emergency School Aid Act, 20 U.S.C. §§ 3191 *et seq.*,[3] because the plaintiffs have not been awarded the relief sought in their complaint.

Accordingly, for the aforementioned reasons, the judgment of the district court of non-mootness is affirmed. We express no view, as an original proposition, of the merits of this controversy. Whatever view of the merits this panel might have as an original proposition, we are unable to find "unusual and compelling circumstances" to warrant our departure from the law of the case established in the prior opinion. Therefore, we consider ourselves bound to and do reinstate the prior opinion in this case to uphold the district court's denial of plaintiff's motion for an injunction and its denial of attorney's fees to the plaintiffs. The parties shall bear their own costs on appeal.

AFFIRMED.

---

**3.** The provision for attorney's fees under the Emergency School Aid Act, 20 U.S.C. § 1617, upon which this court's prior decision was based, was repealed effective one month after our decision and recodified without substantive change in 20 U.S.C. § 3205.

**CUDAHY, Circuit Judge, concurring:**

I think it important that Judge Pell's excellent opinion for the court expresses no view, as an original proposition, of the merits of this controversy. Were this a matter of first impression, I would have difficulty, under the Fourteenth Amendment, approving even well-intended measures which tend to exclude or stigmatize a racial minority. *See Fullilove v. Klutznick*, 448 U.S. 448, 518, 100 S.Ct. 2758, 2795, 65 L.Ed.2d 902 (Marshall, J., concurring in judgment) (1980). I fully agree, however, that we are bound by our prior opinion in this case.