NATIONAL PEOPLE'S ACTION,
Plaintiff,

v.

CITY OF BLUE ISLAND, ILLINOIS,
Defendant.

No. 83 C 5726.

United States District Court,
N.D. Illinois, E.D.

April 11, 1984.

Mark W. Bennett, Babich, Bennett & Nickerson, Edward A. Voci, Chicago, Ill., for plaintiff.

James R. Schirott, Schirott & Elsner, Itasca, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action under the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"), is before the court on the motion for partial summary judgment of plaintiff National People's Action ("NPA") against the City of Blue Island ("Blue Island"). NPA challenges the constitutional validity of one of Blue Island's ordinances, both on its face and as applied. The 1958 ordinance in controversy, entitled "An Ordinance Regulating Peddlers, Solicitors and Canvassers and Providing for Permits and Fees Therefor," No. 2005, as amended in 1966 by No. 2009, contains several provisions that allegedly violate NPA's rights under the first and fourteenth amendments to the United States Constitution. As relief, NPA seeks a declaratory judgment that the ordinance violates the first and fourteenth amendments of the United States Constitution, an injunction enjoining future enforcement of

the ordinance, actual damages, costs, and reasonable attorneys' fees. .

Briefly described, plaintiffs' allegations charge that on July 25, 1983, NPA agent Amy McGee requested information of Blue Island on how to engage in canvassing, leafletting, petitioning, and soliciting of funds in Blue Island. Several communications between Blue Island officials and agents of NPA ensued in which NPA requested permission to conduct these activities in Blue Island. These communications culminated in a letter from Stan Lukas, president of the Blue Island Chamber of Commerce, denying NPA's request because the city "had been inundated this year with not only our own tag days but also outside requests to canvass our community...." NPA alleges that but for this enforcement of the ordinance, NPA would engage in leafletting, petitioning, and solicitation of funds in Blue Island.

Plaintiffs move for partial summary judgment "on the issue of liability—the constitutionality of the municipal ordinance in question ..." (Plaintiff's Motion for Partial Summary Judgment p. 1.) The contents of the 1958 and 1966 documents are not in dispute. (See Memorandum in Opposition pp. 1, 2 nn. 1–2.) Neither is it disputed that Lukas sent the letter denying a permit to NPA on August 2, 1983. (Blue Island Answer ¶ 11.) The contents of that letter are not disputed. (*Id.*) Blue Island admits that it is an Illinois municipality and that its actions in denying NPA's request for a permit were taken under color of state law. (*Id.* at ¶¶ 5, 14.) Indeed, Blue Island admits that the ordinance was unconstitutionally applied to NPA's request, although it contends that the ordinance is facially constitutional. (Memorandum in Opposition p. 1.) Before the court may inquire into the constitutionality of the ordinance, however, it must address Blue Island's argument that the case is moot, as no case or controversy is alleged.

**Mootness**

Blue Island argues that the case is moot based upon two factual assertions that NPA never denies. First, Blue Island claims to have invited NPA to canvass two days after the present suit was filed. Second, at some time after the suit was filed, Blue Island informed NPA, and now informs the court, that NPA was in fact exempt from the application of the ordinance, and could therefore canvass without a permit. (The ordinance describes the sort of organizations that are exempt from its scope. Incidentally, NPA nowhere alleges or argues that it ever sought to determine whether it was exempt from the ordinance.) As there is no longer a case or controversy, Blue Island contends, the court must dismiss this action.

The Seventh Circuit has recently explained that

> A case or controversy may become moot because there is no reasonable expectation that the alleged act will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

*Johnson v. Board of Education of Chicago,* 664 F.2d 1069, 1071 (7th Cir.1981), *rev'd on other grounds,* 457 U.S. 52, 102 S.Ct. 2223, 72 L.Ed.2d 668 (1982).

■ Of course, a defendant's voluntary cessation of the actions complained of will not moot a controversy, in part because the defendant would otherwise be "free to return to his old ways." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). It is the defendant's burden to prove that the offending activity has stopped and will not be repeated before a court may dismiss an action for mootness. *Id.* at 633, 73 S.Ct. at 897. Even when the defendant has abrogated the policy causing the injury, plaintiff's case may not be moot as "there can be no assurance that [the defendant] will not resurrect the old procedure in the future. The propriety of injunctive relief cannot be foreclosed by a promise to discontinue what has been an established pattern of wrongdoing." *Boyd v. Adams,* 513 F.2d 83, 89 (7th Cir.1975).

■ In addition, the court must satisfy itself that plaintiff has been accorded full

relief. In *Black v. Brown*, 513 F.2d 652, 654–655 (7th Cir.1975), the Court held plaintiff's claim for an injunction moot, since the injury of which he complained, being held in a prison isolation cell, had ended. However, the § 1983 action was not dismissed in full, for the plaintiff still had claims for declaratory and monetary relief. *Id.* When the action under examination for mootness is not a class action, the inquiry centers on whether the particular plaintiff has been accorded a full remedy and assured that, with respect to *that plaintiff,* the injury will not be repeated. L. Tribe, *American Constitutional Law* § 3–14, at 64, 67 (1978); *but see id.* at 64 n. 9. For example, in *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), plaintiff DeFunis complained he was denied admission to law school on account of his race. As the case made its way through the state court system, DeFunis, who, by order of the trial court, had been admitted to the law school for the year to which he had applied, made his way through law school. At the time the United States Supreme Court heard the case, DeFunis, who had not requested damages or declaratory relief, was in his last year of law school. The law school assured the Court that he would be permitted to finish his studies, whatever the outcome of the case. The Court found DeFunis had been accorded full relief in the interim. The Court explained that the particular action, refusal to admit DeFunis to law school because of his race, could never again occur to DeFunis:

> [M]ootness in the present case depends not at all upon a "voluntary cessation" of the admissions practices that were the subject of this litigation. It depends, instead, upon the simple fact that DeFunis is now in the final quarter of the final year of his course of study, and the settled and unchallenged policy of the Law School to permit him to complete the term for which he is now enrolled.

It might be suggested that this case presents a question that is "capable of repetition, yet evading review," [citations omitted] and is thus amenable to federal adjudication even though it might otherwise be considered moot. But DeFunis will never again be required to run the gantlet of the Law School's admission process, and so the question is certainly not "capable of repetition" so far as he is concerned.

*Id.* at 318–319, 94 S.Ct. at 1706–07. The Court noted that if the complained of admissions policies continue, "there is no reason to suppose that a subsequent case attacking those procedures will not come with relative speed to this Court, now that the Supreme Court of Washington has spoken." The Court concluded that the case did not present that exceptional situation warranting departure from the rule that a case or controversy exist through all stages of an action, and not simply at the time such action is commenced. *See, e.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

The *DeFunis* decision that the case was moot relied strongly on the fact that DeFunis's admission could not be reversed. The Court noted that DeFunis complained of the school's admissions procedure. Had the question of mootness arisen by reason of the law school's unilateral change in admissions procedures, the Court continued, it may not have found the case moot.

> [A] voluntary cessation of the admissions practices complained of could make this case moot only if it could be said with assurance "that 'there is no reasonable expectation that the wrong will be repeated.'" [Citation omitted.] Otherwise, "[t]he defendant is free to return to his old ways," [citation omitted], and this fact would be enough to prevent mootness because of the "public interest in having the legality of the practice settled." [Citation omitted.] But mootness in the present case depends not at all upon a "voluntary cessation" of the admissions practices that were the subject of this litigation. It depends, instead, upon the simple fact that ... the settled and unchallenged policy of the Law School [is] to permit him to complete the term for which he is now enrolled.

416 U.S. at 318, 94 S.Ct. at 1706.

With these principles in mind, it is clear that NPA's claim for monetary dam-

ages is not moot, as NPA has not been accorded financial relief for the injury alleged. However, the action for declaratory and injunctive relief is moot. Blue Island has informed both NPA and this court that under the section of the ordinance in question, NPA is exempt. Blue Island has also admitted that applying the ordinance to NPA was unconstitutional in violation of NPA's first amendment rights under the federal constitution. These admissions make unnecessary the declaration that the ordinance was unconstitutionally applied or that NPA was exempt from its scope, since there is no risk under Blue Island's interpretation that it will ever apply the ordinance to NPA again. For the same reasons, the injunctive remedy is also moot.

### Constitutionality of the Ordinance

■ NPA has challenged the ordinance both on its face and as applied. The court need not determine this latter issue, as Blue Island admits that applying the ordinance to NPA was unconstitutional. The final liability question is whether the statute is facially unconstitutional. The court finds that it is.

The ordinance in question covers canvassers, peddlers, and solicitors. It defines a canvasser as

any person who travels from place to place within the city by foot or other conveyance distributing product samples, advertisements or any item of similar nature or seeking donations or information.

Blue Island, Ill., Ordinance 2005(1)(c). NPA's application was allegedly for permission to canvass and to gather information. Hence, it is the ordinance's treatment of canvassers that the court examines. The ordinance provides that no person shall engage in canvassing, peddling, or soliciting without either the consent of the occupant of each residence visited or a permit issued by Blue Island upon application. *Id.* at (2)(a). It also calls for an investigation of the applicant's criminal record and of the application's accuracy. *Id.* at (3)(a).

Section 4, governing the "Issuance of Permit," however, prescribes no standards with respect to issuing permits to canvassers, except for a five-day waiting period between the application and the permit issuance, *id.* at 4(a), and a prohibition of issuance to felons, those afflicted with a communicable disease, and persons who have falsified their applications, *id.* at 4(b). Section 5 requires an application to be accompanied by a bond and a ten dollar fee. *Id.* at 5(a)–(b).

Blue Island admits these provisions are unconstitutional as applied to NPA, but draws the court's attention to Section 6, amended on September 26, 1966. That section states in part:

*Exemptions:* The provisions of this ordinance shall not apply to the following:

\* \* \* \* \* \*

(e) persons, firms or corporations engaged in a business or any other activity which is exempt by any constitutional or statutory provisions of the laws of the United States of America or of the State of Illinois . . . .

NPA attacks the ordinance's unconstitutionality with respect to its restrictions on canvassing. NPA is correct, and Blue Island apparently agrees, that organizations that solicit donations and disseminate information door-to-door engage in speech that is constitutionally protected by the first amendment.

Prior authorities . . . clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment.

*Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73, *reh'g denied,* 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250 (1980). Of course, such "soliciting and canvassing from door to door [is] subject to reasonable regulation so as to protect the citizen against crime and undue annoyance, but . . . the First Amendment

require[s] such controls to be drawn with 'narrow specificity.' " *Id.* (citing *Hynes v. Mayor of Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976)). In *Village of Schaumburg,* the Supreme Court warned that such regulation

> must be undertaken with due regard for the reality that solicitation is characteristically entwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information would likely cease.

444 U.S. at 632, 100 S.Ct. at 833. The ordinance in question at first appears to apply to such organizations. *See* Blue Island, Ill., Ordinance 2005(1)(c), 2(a).

Proceeding on the theory that the ordinance applies to such organizations, NPA contends that the ordinance is unconstitutional as granting overly broad discretion to issue such permits to Blue Island officials, as lacking procedural safeguards, as impermissibly denying felons the right to canvass, and as impermissibly limiting the time of day in which organizations may canvass. To cure these violations, Blue Island points to § 6(e).

The court interprets § 6(e) as exempting from the ordinance's scope any organization upon which such restrictions would be invalid, under federal or state law or constitution. How § 6(e) is to be executed is unclear. For example, should the Blue Island officials have invited NPA to prove that it would be exempt under the federal constitution from complying with the ordinance? Or, should the NPA have simply determined on its own that it was exempt from the ordinance, and proceeded to canvass the residents of Blue Island? The allegations do not reveal any attempts by Blue Island to determine whether NPA would be exempt or any attempts by NPA to request an exemption.

Simply put, the Blue Island ordinance purports to regulate canvassing, peddling, and soliciting, except where regulation as prescribed by their ordinance would be unconstitutional. The court must now determine whether this exemption cures the admitted overbreadth and other constitutional defects in the statutes, or simply creates a different defect, that of unconstitutional vagueness.

The Supreme Court summarized the general principles of the void-for-vagueness doctrine in *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). There, the Court explained

> The [void-for-vagueness] doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.

\*     \*     \*     \*     \*     \*

> Due process requires that all "be informed as to what the State commands or forbids," [citation omitted], and that "men of common intelligence" not be forced to guess at the meaning of the criminal law. [Footnotes omitted.]

*Id.* at 572–573, 574, 94 S.Ct. at 1246–1247. Vagueness in statutes and ordinances regulating speech has the additional problem of chilling constitutional speech. *See Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1322, 12 L.Ed.2d 377 (1964); *see also United States v. National Dairy Products Corp.,* 372 U.S. 29, 36, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) (standards of specificity in antitrust laws less stringent than in laws regulating speech, as vagueness in latter context may infringe on constitutionally protected and socially desirable conduct, which is not the case in conduct that may violate antitrust laws). Moreover, when the vagueness of a statute is only marginal, and the core of conduct sought to be prohibited is clear, the Court has been unwilling to declare the statute void for vagueness. *United States v. Petrillo,* 332

U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947). There, a statute rendered criminal compelling an employer to hire "unneeded" employees. The Court found the core conduct addressed by the statute sufficiently clear, finding marginal any vagueness in applying the statute to conduct on the fringes of the statute's scope.

Professor Tribe has explained that courts are hesitant to invalidate statutes that are only marginally vague, as the legislature is faced with difficult and conflicting policy choices in determining how broadly or narrowly to write a statute. He concludes that finding a statute unconstitutionally "vague and therefore void as a matter of due process is thus unlikely to be triggered without two findings: that the individual challenging the statute is indeed one of the entrapped innocent, and that it would have been practical for the legislature to draft more precisely." L. Tribe, *American Constitutional Law* § 12–28, at 719 (1978).

Cases in which the void-for-vagueness doctrine is examined with respect to a particular statute attempt to determine whether the defendant had notice that her or his conduct was regulated thereby. Here, the question is whether NPA knew it was, as Blue Island contends, exempt from the application of the ordinance. Evidence that they did not exists in the fact that upon receipt of the copy of the ordinance, NPA did not immediately start canvassing. Moreover, Blue Island's refusal to issue the permit can only be taken as their understanding that NPA was within the ordinance's scope. These facts support a finding that the exemption provision was in fact impermissibly vague.

The exemption provision may be described as a "savings clause"[1] in that it attempts to "save" a statute that might otherwise be unconstitutional solely by claiming that the statute should not be construed in such a way as to render it unconstitutional. While the court is aware of no case exactly on point, two Supreme Court cases are informative on whether such a savings clause is void for vagueness.

In *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), the Court examined for impermissible vagueness a statute making criminal the willful violation of the rights of citizens under the due process and privileges and immunities clauses of the federal constitution. (This statute is presently codified with few amendments at 18 U.S.C. § 242.) The petitioner in that case had been convicted under the statute and argued that it was unconstitutional "in so far as it makes criminal acts in violation of the due process clause of the Fourteenth Amendment." Petitioner Screws contended that the due process clause is capable of wide and varying interpretations; its "broad and fluid definitions" provided "no ascertainable standard of guilt." *Id.* at 95, 65 S.Ct. at 1032. The Court discussed the "serious character of [this] challenge":

> In the instant case, the decision of the courts are, to be sure, a source of reference for ascertaining the specific content of the concept of due process. But even so the Act would incorporate by reference a large body of changing and uncertain law. That law is not always reducible to specific rules, is expressible only in general terms, and turns many times on the facts of a particular case. [I]t is argued ... Congress did not define what it desired to punish but referred the citizen to a comprehensive law library in order to ascertain what acts were prohibited.

*Id.* at 96, 65 S.Ct. at 1032. The Court, suggesting that such a standard would be unconstitutionally vague, pointed out that courts should construe a law as to render it constitutional. *Id.* at 98, 65 S.Ct. at 1033. The Court also noted that were the statute's incorporation of the due process clause impermissibly vague, the statute's incorporation of the privileges and immunities clause would also be vague. *Id.* at

---

**1.** The term "saving construction" is employed by Laurence Tribe in *American Constitutional Law*

§ 12–26 at 714 (1978).

100, 65 S.Ct. at 1035. The Court did not have to declare the statute unconstitutionally vague, however, as it construed "willful" as incorporating a standard of specific intent. According to the Court, such a construction would "relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." *Id.* at 102, 65 S.Ct. at 1035–36.

In *Screws*, it is strongly suggested that the due process and privileges and immunities clauses of the federal constitution so vaguely prescribe standards of behavior as to render void a statute criminalizing violations of those standards. To avoid such an interpretation, the Court construed the statute as incorporating a specific intent standard. Here, the ordinance in question purports to regulate a certain type of speech, canvassing, unless such regulation would violate not only the federal constitution (here, the first amendment guarantees of free speech), but federal law and Illinois's law and constitution. Potential canvassers are put on notice that, unless federal or Illinois law so prohibits, they must apply for and receive a permit before canvassing. Under the analysis employed in *Screws*, to determine that such application was unnecessary, the potential canvasser would need knowledge of all law applicable to her or his activities. The court is unaware of any penalties imposed on those who violate this ordinance. The potential canvasser, determining that her or his speech was protected from the ordinance's requirements, would have to weigh the risk of confronting any penalties if Blue Island's interpretation of the law differed from her or his own. If the burden of determining whether an applicant is exempt from the ordinance falls on Blue Island, it is arguable that the standards of the exemption are so vague as to allow incorrect, arbitrary, or invidious application of the exemption. At least in this case, both parties failed to recognize that NPA was under the exemption.

Without mentioning *Screws*, the Court recently appeared to cut back on the analysis of that case in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 *reh'g*

*denied,* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). In *Arnett*, the court examined for vagueness and overbreadth a provision allowing the removal or suspension without pay of federal employees "for such cause as will promote the efficiency of the service." *Id.* at 158, 94 S.Ct. at 1646. The Court recognized that this clause "is without doubt intended to authorize dismissal for speech as well as other conduct," *id.* at 160, 94 S.Ct. at 1647, and in fact the petitioner had been fired for his speech. The Court noted, and the petitioner agreed, "that in certain situations the discharge of a Government employee may be based on his speech without offending ... the First Amendment...." Addressing the vagueness issue, the Court held the language was not unconstitutionally vague as petitioners could be guided by the "longstanding principles of employer-employee relationships," which regulations promulgated under the statute provided should guide its interpretation. The Court noted further that the regulations provided that its Office of General Counsel was available to counsel employees on the statute and its regulations.

According to the Court, the availability of such counsel was crucial to an earlier decision rejecting a vagueness attack on a similar statute in *Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 580, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). The Court concluded that the statute was not impermissibly vague, as "the Act describes, as explicitly as is required, the employee conduct which is ground for removal."

Discussing the overbreadth issue, the Court rejected petitioners' claim that the Act allowed discharges for exercise of constitutionally protectible speech. Justice Rehnquist explained that

"Congress ... obviously did not intend to authorize discharge under the Act's removal standard for speech which is constitutionally protected. The Act proscribes only that public speech which improperly damages and impairs the reputation and efficiency of the employing

agency.... We hold that the language "such cause as will promote the efficiency of the service" in the Act excludes constitutionally protected speech and that the statute is therefore not overbroad."

*Id.* 416 U.S. at 162, 94 S.Ct. at 1648.

By this analysis, the Court rejected an overbreadth challenge, similar to that propounded by NPA here, by construing the statute as not regulating constitutionally protected speech. Blue Island asks the court similarly to reject NPA's overbreadth and other first amendment challenges by finding that the exemption prevents unconstitutional or unlawful regulation of canvassing. Justice Marshall, joined by Justices Brennan and Douglas, dissented in *Arnett,* explaining:

> The majority purports to solve this potential overbreadth problem merely by announcing that the standard in the Act "excludes protected speech." Nonetheless, it leaves the statutory standard intact and offers no guidance other than general observation as to what conduct is or is not punishable. The Court's answer is no answer at all. To accept this response is functionally to eliminate overbreadth from the First Amendment lexicon. No statute can reach and punish constitutionally protected speech. The majority has not given the statute a limiting construction but merely repeated the obvious.

*Id.* at 229, 94 S.Ct. at 1681. The court notes, however, that the regulations and availability of counsel present in *Arnett* distinguish it from *Screws.* The *Arnett* Court was clearly influenced by the ability of these aids to alleviate any misunderstandings of the statutory language.

Professor Tribe has indicated that a "savings clause" of the type implied in *Arnett* and found in this ordinance strongly risk impermissible vagueness. He notes that were the saving interpretation related to first amendment law that is relatively precise and applicable to several categories of speech, it may pass constitutional muster. For example, state libel statutes are understood to incorporate the principles of *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), obviating rejection of all statutes that do not include specific limitations on libel actions against public figures. However, other first amendment doctrines are not so categorically applicable and clear, but depend upon the various fact situations present in each circumstance. As an example, he points out the "fighting words" doctrine of *State v. Chaplinsky,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), which turns on "facts particular to the speaker, the audience, and their interaction." L. Tribe, § 12-26, at 715. He concludes that

> To construe a statute by reference to such a fact-oriented standard is to inject an excessive element of vagueness into the law because the standard itself takes shape only as courts proceed on a retrospective, case-by-case basis to determine when offensive speech has become unprotected as an instance of "fighting words."

*Id.* at 716. Criticizing *Arnett* as "simply exchang[ing] overbreadth for vagueness," Professor Tribe posits that "the premise underlying *any* instance of facial invalidation for overbreadth must be that *the Constitution does not, in and of itself, provide a bright enough line to guide primary conduct....*" (Emphasis original). *Id.*[2] Support for this premise is clearly found in the Court's opinion in *Screws.*

The court is persuaded by the analysis of *Screws.* As mentioned above, the exemption in the present ordinance alludes to state and federal law and constitutions, thereby referring to a vast and diverse body of law as guidance for the potential canvasser. Such a general exemption does not sufficiently inform canvassers of the activity for which a permit is required. In addition, the law of canvassing, unlike the

---

2. Tribe illustrates this principle by the following hypothetical statute: "It shall be a crime to say anything in public unless the speech is protected by the first and fourteenth amendment." *American Constitutional Law* § 12–26, at 716.

public figure doctrine, is not precise and capable of bright-line drawing. In fact, door-to-door speech may be regulated to a certain extent in a way that speech in a public place may not. A municipality may legitimately be concerned about crime and annoyance of its residents, rendering more important the specific facts of each applicant in the balancing test it may employ in issuing permits. That such a balancing test is difficult of both accurate and broad generalization is indicated by the facts in this case.

Hence, the court finds that the exemption, in attempting to cure overbreadth and other admitted constitutional defects in the ordinance, in turn renders the ordinance unconstitutionally vague. Such a conclusion is supported both by the cases discussing the void-for-vagueness doctrine and by the analysis of *Screws*. *Arnett* is less persuasive because the facts of that case indicate that the provision of guidance—through regulations, the law of employer-employee relations, and the services of the General Counsel—significantly aided those affected by the statute in determining what constituted protected and unprotected speech. Hence, the Court's construction, that the statute did not reach protected speech, was not the only aid in interpreting the scope of the statute.

NPA attacked the ordinance as facially unconstitutional on many grounds. Blue Island's response was to admit that the ordinance was unconstitutionally applied and to defend against NPA's constitutional challenges solely by contending that § 6(e) cured any constitutional defect. The court has found that this clause is unconstitutionally vague. Moreover, the court interprets Blue Island's response as admitting that the ordinance would be facially unconstitutional absent the exemption clause. Hence, the court has not examined NPA's challenges and accepts the parties' agreement on this point. If Blue Island contends that absent § 6(e) the ordinance is still facially constitutional, it should bring this contention to the court's attention in a motion to reconsider.

Plaintiff's motion for partial summary judgment is granted. Blue Island's admission indicates that the ordinance was unconstitutionally applied. Moreover, the court interprets this admission and Blue Island's argumentation as admitting that without the exemption in § 6(e), the ordinance would be facially unconstitutional. Section 6(e) has been found by the court to be unconstitutionally vague. Hence, the ordinance's provisions relating to soliciting and canvassing are unconstitutional. The ordinance contains a severability clause in § 9. As NPA has not challenged, nor argued that it had standing to challenge, the ordinance's provisions respecting peddling, the ordinance remains in effect for peddlers.

It is so ordered.